FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 1 1 2012

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSE GUADALUPE ROJAS-GUZMAN,
a/k/a ANGEL, AURELIO NUNES-MOLINA,
and MARIO ADRIAN LOPEZ-FERNANDEZ,
a/k/a MARIO,

    Defendants.

3:10-cr-109-RCJ-WGC

**ORDER**

Currently before the Court is Defendant Jose Guadalupe Rojas-Guzman's Motion for Judgment of Acquittal or for a New Trial under Federal Rules of Civil Procedure 29 and 33 (#157). The Court heard oral argument on April 2, 2012. This order also incorporates the findings made at oral argument.

## BACKGROUND

In November 2011, the grand jury indicted Defendant Jose Guadalupe Rojas-Guzman ("Defendant") and co-defendant Mario Adrian Lopez-Fernandez ("Lopez") on three counts. (Superseding Indictment (#70)). Count One alleged that, between approximately September 7, 2010 and September 11, 2010, Defendant and Lopez conspired with Aurelio Nunes-Molina ("Nunes") to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 18 U.S.C. § 2. (Id. at 1-2). Count Two alleged that, on September 7, 2010, Defendant and Lopez knowingly distributed 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. (Id. at 2). Count Three alleged that, on September 11, 2010, Defendant and Lopez knowingly

possessed with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. (*Id.*).

In December 2011, the Honorable Edward C. Reed conducted a five-day jury trial. (*See* Minutes of Proceedings (#120, 121, 125, 130, 131)). At the end of the government's case, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). (*See* Minutes of Proceedings (#130) at 2). Judge Reed denied the motion. (*Id.*). At the end of the defense's case, Defendant renewed his motion for judgment of acquittal. (*Id.* at 3). Judge Reed denied the motion. (*Id.*). The jury found Defendant guilty on all three counts. (Verdict Form (#135)).

## LEGAL STANDARD

Pursuant to Fed. R. Crim. P. 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In reviewing sufficiency of the evidence, the "test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990). There is sufficient evidence to support a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008). "Conflicting evidence is to be resolved in favor of the jury verdict, and 'all reasonable inferences are to be drawn in favor of the government.'" *United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir. 2007).

## DISCUSSION

Defendant argues that his conviction must be reversed because the government failed to introduce sufficient evidence demonstrating his guilt in all three counts. (Mot. for Acquittal (#157) at 7). He asserts that the government has attempted to sustain a conviction on circumstantial evidence alone. (*Id.* at 8). Although he recognizes that circumstantial evidence can support a conviction, the circumstantial evidence in this case only amounts to

reasonable speculation which is insufficient to support a conviction. (*Id.*). Defendant argues that the only evidence that the government presented were intercepted telephone conversations between Defendant and other individuals that were mis-interpreted as supporting the claims that he had aided and abetted Lopez and Nunes in their illegal transactions involving the distribution and sale of methamphetamine. (*Id.*).

In response, the government asserts that the jury considered both direct and circumstantial evidence in this case. (Opp'n to Mot. for Acquittal (#166) at 8). The government asserts that there was direct evidence in the form of Lopez's trial testimony regarding the events charged in the superseding indictment and task force agents' testimonies regarding their personal observations on September 11, 2010. (*Id.*). The government also argues that there was an overwhelming amount of circumstantial evidence regarding Defendant's guilt in the case. (*Id.*).

The Court finds that there is sufficient evidence in this case to sustain Defendant's conviction on all three counts. At trial, the government presented evidence that Drug Enforcement Administration ("DEA") agents had obtained authorization to intercept communications from cellular phone number (650) 477-5763, which was used by Defendant, and cellular phone number (714) 353-4081, which was used by both Lopez and Nunes. The DEA also had obtained a court order authorizing the GPS tracking of cellular phone number (714) 353-4081.

The government presented evidence that, on September 7, 2010, a DEA confidential source ("CS") called cellular number (714) 353-4081 to order four ounces of methamphetamine, which the CS referred to as "four oranges." Two minutes after taking the CS's order, Nunes called Defendant on cellular number (650) 477-5763 and told the Defendant that the "guy that has the Jetta" (CS) wants "four apples," referring to the four ounces of methamphetamine. Defendant responded "Damn. That's dangerous, isn't it?" and then told Nunes to do it, but to tell the CS "no less than 1000 . . . because the work is really good." Three minutes later Nunes called the CS and said, "I just talked with my boss and he says that if you want them it's a grand man." The CS agreed to the $1000 per ounce price.

Twenty minutes later, Defendant called Nunes and asked what the guy in the Jetta had said. Nunes told Defendant that the CS had "said yes." Defendant then told Nunes "you go" or "both you guys go," "because this guy is capable of taking it away from us." Within the hour Nunes and Lopez, as directed by Defendant, went to the transaction place driving an Infiniti with Nevada license plates 634 XBR. Lopez sold the CS four ounces of methamphetamine for $4000. Shortly after the sale, Defendant called cellular number (714) 353-4081 and asked whether they had seen that guy "with the four." Lopez told Defendant, "Yeah, we came back already." As such, the Court finds that a rational trier of fact could find that Defendant had aided and abetted in the distribution of four ounces of methamphetamine on September 7, 2010.

The government presented evidence that, on September 10, 2010, agents intercepted calls between Defendant, Nunes, and Lopez discussing whether Nunes or Lopez were going to pick up "food", a colloquial term for methamphetamine, to bring back to Reno for Monday, when the CS would be calling "to see quantities." During these calls, Defendant discussed whether he would rent a car to drive to Reno, or meet Nunez or Lopez halfway, or have one or both of them come up to see him in the Bay Area. An intercepted call that night demonstrated that Nunes and Lopez agreed to see the Defendant the next morning. During that call, Defendant informed Nunes that he "wants to have the money here."

The government presented evidence that, on September 11, 2010, agents intercepted telephone calls between Nunes on cellular number (714) 353-4081 and Defendant on cellular number (650) 477-5763 at 9:46 a.m. in which Nunes told Defendant that he was "here." Defendant then told Nunes to "go get gas and leave me . . . the money there in the apartment, dude." The GPS data for the phone revealed that cellular phone (714) 353-4081 had traveled from Reno to the Bay area that morning. At 9:46 a.m., cellular phone number (714) 353-4081 was in the vicinity of 1012 East Poplar Street in San Mateo, California. A DEA agent contacted members of the San Mateo Narcotics Task Force to ask for assistance in conducting surveillance in the area. Task Force Agents Koti Fakava and Dan Guiney responded and testified at trial to the following. Fakava had observed and photographed

Defendant walking up to and into 1012 East Popular Avenue, Apartment 1, carrying a white paper bag. Five minutes later, Guiney observed Nunes and Lopez leave 1012 East Popular Avenue, Apartment 1, with Lopez carrying a white paper bag. Fakava observed Nunes and Lopez walk away from the apartment and approach a Nissan Infiniti with Nevada license plate 634 XBR, with Lopez carrying a white paper bag and placing it in the truck of the car. Around the same time, agents intercepted a telephone call between Nunes and Defendant in which Nunes told Defendant that "it doesn't fit where the car jack is, man, or in front." Two minutes later, in another phone call between Nunes and Defendant, Defendant asked Nunes "It's tough to unwrap it?" to which Nunes responded, "Yeah, man, well it's a [expletive] mess here." On the intercepted call, Defendant told Nunes to "bring it over here," to which Nunes replied that he was going to Defendant's house. Lopez, who had been getting a hair cut for a brief time, testified that Nunes had picked him up in the Infiniti and told him that the methamphetamine was in the dashboard/air conditioning vent.

The government presented evidence that, at 4:20 p.m., Defendant from cellular number (650) 477-5763 called Lopez and told him "Get going already." Lopez told Defendant that they had already left. The GPS data for cellular phone (714) 353-4081 during the intercepted 4:20 p.m. call revealed the cellular phone traveling from the Bay Area on Interstate 80 in the direction of Reno. At 7:58 p.m., Defendant called cellular phone (714) 353-4081 to confirm travel. Lopez responded that they were in Truckee. Defendant then told Lopez that Gallina, a previous customer to whom Lopez had sold crystal to before, "wanted to see a little . . . when you arrive, give me a call." Twenty minutes later, a DEA agent and Washoe County Deputy Sheriff stopped the Nissan Infiniti bearing Nevada license plate 634 XBR, occupied by Nunes and Lopez, on Interstate 80 near the outskirts of Reno. Law enforcement recovered one pound of methamphetamine from inside the dashboard and recovered cellular phone (714) 353-2081. The DEA agent found and photographed the white paper bag in the trunk of the Infiniti.

Later that evening, Fokava obtained a state search warrant for 1012 East Poplar Avenue, Apartment 1. Law enforcement conducted a search warrant in the early morning

5

hours of September 12, 2010, and found Defendant sleeping on the couch and cellular phone (650) 477-5763 on the couch were Defendant had been sleeping. During Lopez's trial testimony, he identified Defendant as the person who had provided he and Nunes the crystal inside the white paper bag on September 11, 2010 in 1012 East Poplar Avenue, Apartment 1 and as the person who was intercepted on various calls with Lopez. As such, the Court finds that a rational trier of fact could find that Defendant had aided and abetted in possession with intent to distribute approximately one pound of methamphetamine on September 11, 2010. Accordingly, the Court DENIES Defendant's Motion for Judgment of Acquittal or in the Alternative a New Trial (#157).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Judgment of Acquittal or in the Alternative a New Trial (#157) is DENIED.

DATED: This 11th day of May, 2012.

United States District Judge